## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM C. MEAD, JR.** <br> 346 Tavistock Dr. <br> Burlington County, Medford NJ 08055 <br> 856-912-5391 <br> *Plaintiff,* <br><br> v. <br><br> **WILLS EYE HOSPITAL, an entity bequeathed to the City of Philadelphia by James Wills and administered by the Board of Directors of City Trusts,** <br> Principal Place of Business: <br> 840 Walnut St. <br> Philadelphia, PA 19107 <br><br> Principal Address: <br> 211 South 9th Street <br> Philadelphia, PA 19107 <br><br> And <br><br> **ANAND D. GOPAL, M.D.** <br> 1100 W. Central Rd, LL2 <br> Arlington Heights, IL 60005 <br><br> c/o Midwest Retina Consultants, SC <br> 8901 W Golf Rd Ste 206 <br> Des Plaines, IL 60016 <br><br> **Defendants.** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Case No. <br><br> **CIVIL ACTION** <br><br><br> **COMPLAINT** <br><br><br> **JURY TRIAL DEMAND** |

Plaintiff, William C Mead Jr., brings this Complaint against Defendants Wills Eye Hospital, an entity bequeathed to the City of Philadelphia by James Wills and administered by the Board of Directors of City Trusts and its former Fellow, employee, Anand D. Gopal, M.D. and in support thereof, alleges as follows:

## NATURE OF CASE

Plaintiff William Mead went to Wills Eye Hospital on Sunday May 14, 2023, to get an evaluation of his <u>right</u> eye to determine if a vitreous gel detachment had occurred, but departed Wills Eye Hospital with a hole in the retina of his <u>left</u> eye. Defendant, Dr. Gopal insisted [and would not take "no" for an answer] that plaintiff must undergo "emergency" surgery, that plaintiff now realizes was unnecessary surgery. The plaintiff reluctantly agreed to the surgery only after Dr. Gopal expressly represented that plaintiff's vision would be the same after the surgery as it was when plaintiff walked into the Wills Hospital facility. Dr. Gopal never informed Plaintiff of any potential complications, risks, alternative procedures or treatments. Despite the express warranty, the plaintiff's vision has been permanently and detrimentally altered. The hole in Plaintiff's retina caused a partial loss of sight and changes in Plaintiff's vision.

## JURISDICTION AND VENUE

1. Plaintiff invokes federal diversity jurisdiction pursuant to 28 U.S. Code § 1332(a)(1) because this matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

2. Venue is appropriately laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) because Defendant Wills Eye Hospital resides in this judicial district and all claims asserted arose in this judicial district.

## PARTIES

3. Plaintiff William C Mead Jr is an adult individual and citizen of the State of New Jersey, residing in the Township of Medford, Burlington County.

4. Defendant Wills Eye Hospital is an entity bequeathed to the City of Philadelphia by James Wills and administered by the Board of Directors of City Trusts (the "Board") as trustee acting on behalf of the City of Philadelphia. Wills Eye Hospital is an entity operating under the laws of the Commonwealth of Pennsylvania with its principal place of business at 840 Walnut Street, Philadelphia, Pennsylvania 19107 and its principal address at 211 South 9th Street, Philadelphia, Pennsylvania 19107.

5. Defendant Anand D. Gopal, M.D on May 14, 2023, was employed by Wills Eye Hospital as a "Fellow." Dr Gopal performed his Residency at Wills Eye Hospital 2019 to 2022 and his Fellowship at Wills Eye Hospital 2022 to 2024. Dr Gopal is not currently employed by Wills Eye Hospital. Dr. Gopal now works at Midwest Retina Consultants, S.C. in Illinois. Dr Gopal's practice is limited to surgical and medical diseases of the retina and vitreous.

## FACTUAL ALLEGATIONS

6. On December 29, 2022, Plaintiff experiences a vitreous gel detachment in his left eye. He thought he was experiencing an optical migraine, but was later advised it was a vitreous gel detachment.

7. Plaintiff had a retina exam at Mid-Atlantic Retina on January 11, 2023, with Dr. Ho at which time Plaintiff was advised to limit physical activity, specifically anything that would create an "impact." Plaintiff was advised that he had experienced a vitreous gel detachment, and the retinas of both eyes had "lattice" which was explained to be common as we age.

8. On February 15, 2023, Plaintiff had a follow-up retina exam at Mid-Atlantic Retina with Dr. Ho at which time Plaintiff was "cleared" and was advised that there were no longer restrictions to physical activity. Plaintiff was again advised that the retinas of both eyes had "lattice" but there was no procedure that needed to be performed as to the lattice.

9.      On Saturday May 13, 2023, Plaintiff experienced squiggly lines in his right eye which was a situation similar to when he experienced a vitreous gel detachment in his left eye previously [on December 29, 2022]

10.     Plaintiff called his eye doctor, Paul DiFiore and advised that he thought he was having a right eye vitreous gel detachment and sought guidance as to whether he should do anything. Dr. DiFiore advised that what plaintiff was describing seemed like a vitreous gel detachment, but as a precaution it was recommended to contact Mid-Atlantic Retina to see if plaintiff should have an examination to confirm that the right eye was experiencing a vitreous gel detachment.

11.     Plaintiff called and left a message at Mid-Atlantic Retina. Shortly thereafter, Plaintiff received a call from someone at Wills Eye Hospital advising that Plaintiff should go to Wills Eye Hospital the next morning [May 14, 2023] at 9:30 to 840 Walnut St., 10th floor and see Dr Gopal.

12.     As instructed, on the morning of May 14, 2023 Plaintiff went to Wills Eye Hospital in Philadelphia to have an evaluation of his right eye to confirm his hypothesis that he had experienced a vitreous gel detachment in his right eye. The plaintiff's wife accompanied him to the appointment.

13.     Wills Eye hospital is committed to protecting and preserving the vision of its patients.

14.     At the facility on the 10th floor at Wills Hospital on the morning of Sunday, May 14, 2023, there were no staff to assist Dr. Gopal. There was no receptionist, there were no nurses, there were no support staff of any kind, just Dr. Gopal.

15.     Dr Gopal examined both eyes. Plaintiff's wife was present in the examination room and heard and saw all that transpired in the examination room.

16. Dr Gopal confirmed the vitreous gel detachment in the right eye but absolutely insisted that Plaintiff had to have immediate emergency surgery on both eyes because he saw "lattice" in the retinas of both eyes.

17. Plaintiff was already aware of the lattice in the retinas of both eyes and was told by Dr. Ho at Mid-Atlantic Retina it was common, and no action had to be taken.

18. Plaintiff advised Dr Gopal that he would prefer to schedule an appointment with Dr Ho to get his thoughts and opinions as to whether surgery was necessary.

19. Dr Gopal was very persistent and insisted that Plaintiff must get the surgery right now to create a seal around the lattice. Dr Gopal explained that he would use a laser to burn around the outside of the lattice which would then result in a scar, that would seal the lattice.

20. Dr. Gopal was insistent that Plaintiff should not leave without having the emergency surgery.

21. Plaintiff's wife was with him during the initial examination and witnessed the doctor's persistence.

22. Plaintiff told Dr. Gopal "I cannot have surgery because I have to leave the house in the morning at 5:00 a.m. to take my son for his ACL surgery in Philadelphia."

23. Dr Gopal responded, "You will leave here with the same vision you had when you walked in here this morning."

24. Due to Dr. Gopal's persistence and Dr. Gopal's assurance that Plaintiff's vision would not be altered, Plaintiff reluctantly agreed.

25. Plaintiff said, "do I go to an operating room or emergency department," Dr Gopal responded, "don't think of it as surgery, think of it as a procedure, I perform the procedure in the back room"

26. At no time was the Plaintiff advised of any possible risks, complications or alternative non-emergent treatments or procedures.

27. Dr. Gopal took Plaintiff into a back room; Plaintiff's wife was not permitted. Before Dr Gopal got started, he said "I need you to sign this before I can start. The lights were low and due to the exam, and dilatated pupils, Plaintiff could not see what was written on the paper, Plaintiff told Dr Gopal "I can't read anything" Dr. Gopal then put the pen in Plaintiff's hand and guided it for Plaintiff to make a mark on the paper. The laser procedure was painful, Plaintiff could feel the inside of his eyeballs being burned.

28. On May 14, 2023, following the procedure, there was no information provided to the plaintiff in terms of what to expect during the healing process, no documentation was provided, and no instructions were provided, in writing or orally to the Plaintiff.

29. Ever since the surgery, about 20% of the vision in Plaintiff's left eye has been altered. Most of the time it is dark, sometimes it glows / flashes; and sometimes it looks like static on a television. Plaintiff is constantly aware of the limitation in his vision.

30. On June 21, 2023, Plaintiff was told by Dr. Ho at Mid-Atlantic Retina in Cherry Hill, New Jersey [affiliated with Wills] that Plaintiff's condition is caused due to a hole in Plaintiff's retina in the area where the laser burned Plaintiff's eye and that there is no cure for the condition; it is permanent.

31. During the June 21, 2023, appointment Plaintiff insisted that Dr, Ho would see that something was wrong with the lower outside portion of Plaintiff's left eye.

32. During the examination, Dr. Ho first examined Plaintiff's right eye and then while examining Plaintiff's left eye, Dr Ho said that Plaintiff needed to go to another room to have additional images of his left eye taken.

33.     The additional images of the left eye were conducted, and then Plaintiff met again with Dr. Ho [all on this same June 2, 2023 visit]

34.     Dr Ho advised, " I am going to be straight with you, there is a hole in the retina of your left eye."

35.     Dr Ho explained that the hole is toward the top right side of the left eye, but that Plaintiff experiences the issues he is having on the bottom left side of the left eye due to the way the eye sees.

36.     Plaintiff then inquired about how to resolve the issue to which Dr Ho advised that the condition is permanent and cannot be repaired.

37.     Dr. Ho would not answer if the hole was caused by the surgery. Dr Ho became uncharacteristically agitated when questioned about whether Dr Gopal's procedure caused the hole.

38.     On August 2, 2024, while at Mid-Atlantic Retina, before Dr. Ho came in to see Plaintiff, there was some type of assistant or doctor in training that was reading Plaintiff's chart on the computer, she said, "I see that you had holes in the retinas of your right and left eyes that required surgery on May 14, 2023," Plaintiff told her, " Dr Gopal never said anything about a hole in the retina of either of my eyes, Dr. Gopal only informed me that he saw "lattice."

39.     No one ever told Plaintiff anything about a hole in the retina of his right eye at any time.

40.     When Dr. Ho came into the examination room Plaintiff asked:  "is it accurate that I also have a hole in the retina of my right eye" Dr. Ho responded, "yes." Plaintiff then asked, "how come I was never told about it," Dr Ho responded, "it is outside of your field of vision."

41.     Plaintiff is suspicious that perhaps records at Wills Eye Hospital were altered to make it appear as if the May 14, 2023, surgery was performed due to holes in the retinas of each

eye rather than Dr Gopal advising the Plaintiff that he saw "lattice" and never mentioned anything about any holes in the retinas of either Plaintiff's right or left eyes.

42. There are many images depicting the eyes of the Plaintiff both before and after the May 14, 2023, procedure. The images were taken at Mid-Atlantic Retina and Plaintiff's eye doctor [Optique Boutique Doctors Paul DiFiore and Joanna Welsh in Mount Laurel, NJ]

43. Upon information and belief, Dr. Ho discussed Plaintiff's May 14, 2023, procedure with Dr. Gopal.

## FIRST COUNT BREACH OF EXPRESS WARRANTY

44. The preceding paragraphs are incorporated by reference as though set forth herein their entirety.

45. In order to induce the Plaintiff into agreeing to have the laser procedure performed, Dr. Gopal definitively and expressly represented / warranted, that Plaintiff's vision would be the same after the procedure as it was when Plaintiff walked into the Wills Eye Facility

46. Plaintiff detrimentally relied on that representation / warranty when Plaintiff reluctantly agreed to go forward with the surgery.

47. The specific outcome as represented by Dr. Gopal was not achieved, specifically, Plaintiff's vision is not the same as it was when Plaintiff walked into Wills Hospital, instead the Plaintiff has a permanent alteration of the vision in his left eye which he is aware of during all moments that the plaintiff is awake. Therefore, Plaintiff has been damaged by this Breach of an Express Warranty.

WHEREFORE, Plaintiff demands judgment for damages upon this Count of the Complaint against defendants, individually, jointly and/or severally, together with costs of suit and interest.

## SECOND COUNT LACK OF INFORMED CONSENT / BATTERY

48.     The preceding paragraphs are incorporated by reference as though set forth herein their entirety.

49.     Dr. Gopal failed to inform the Plaintiff about the risks, consequences, and alternative procedures. At no time was the Plaintiff advised of any possible risks, complications or alternative non-emergent treatments or procedures.

50.     Plaintiff would not have undergone the surgery if he was advised that the surgery would alter his vision.

51.     Plaintiff consented to undergo the procedure on May 14, 2023, based on a false representation that Plaintiff's vision would not change and Plaintiff was not advised of any risks; therefore the procedure performed on the plaintiff's eyes, which involved burning the inside of plaintiff's eyes with a laser was not authorized and is considered a battery which led to plaintiff's eyes being damaged by the laser.

WHEREFORE, Plaintiff demands judgment for damages upon this Count of the Complaint against defendants, individually, jointly and/or severally, together with costs of suit and interest.

## THIRD COUNT NEGLIGENCE

52.     The preceding paragraphs are incorporated by reference as though set forth herein their entirety.

53.     Dr. Gopal was negligent and breached the standard of care by causing holes in the retinas of Plaintiff's right and left eyes during the surgery procedure on May 14, 2023, which caused damage to Plaintiff's eyes and has altered Plaintiff's vision.

WHEREFORE, Plaintiff demands judgment for damages upon this Count of the Complaint against defendants, individually, jointly and/or severally, together with costs of suit and interest.

### JURY DEMAND

Plaintiff hereby demands trial by jury on all issues in this action

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 12th day of May, 2025.

By: _____
William C. Mead, Esq. 7108
346 Tavistock Dr.
Medford New Jersey 08055
856-912-5391
wmead@fmglaw.com
wmmead5293@gmail.com
*Pro Se Plaintiff*